UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA A. POWELL,
    Plaintiff

Civil Action No. 09-12795

v.

Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff Georgia A. Powell brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.[1]

## PROCEDURAL HISTORY

On February 27, 2006, Plaintiff applied for Disability Insurance Benefits ("DIB"), alleging an onset date of February 24, 2006 (Tr. 41-43). After the initial denial of benefits, she requested an administrative hearing, held before Administrative Law Judge ("ALJ") Ethel Revels in Detroit, Michigan on November 12, 2008 (Tr. 319). Plaintiff, represented by attorney Clifford Weisberg, testified (Tr. 327-357, 363-365) as did Vocational Expert ("VE") Richard Szydlowski (Tr. 357-363, 365-373). On December 23, 2008, ALJ Revels

---

[1] The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c).

found that Plaintiff was not disabled (Tr. 22). On June 3, 2009, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review on July 15, 2009.

## BACKGROUND FACTS

Plaintiff, born August 3, 1971, was 37 when ALJ Revels issued her decision (Tr. 41). She completed high school and one year of college, working previously as a medical biller and chiropractic assistant (Tr. 66, 70). She alleges disability as a result of multiple sclerosis ("MS") and a psychiatric disorder (Tr. 65).

**A.     Plaintiff's Testimony**

Plaintiff, divorced, testified that she resides in Rockwood, Michigan with her seven-year-old son (Tr. 327-328). She reported that after receiving a diploma from Detroit Business Institute, she worked for 15 years as a billing clerk for a chiropractic practice (Tr. 329). Plaintiff testified that the clerk position was generally performed in a seated position (Tr. 331-332).

Plaintiff alleged disability as a result of MS, noting that she was first diagnosed with the condition in May, 2002 (Tr. 332). She reported that she took Copaxone on a daily basis (Tr. 333). Plaintiff also alleged depression, migraines, and memory loss, noting further that she took Cymbalta and Effexor for depression and Provigil to combat fatigue (Tr. 335-338). She reported that she had been diagnosed with MS after experiencing facial drooping (Tr. 339). Plaintiff alleged that at present, MS created memory problems and mood swings (Tr. 341).

Plaintiff acknowledged that her February, 2006 alleged onset of disability coincided with her termination from her most recent job, opining that she was discharged because her former employer failed to train her properly (Tr. 342-344). She alleged that cognitive problems created difficulty helping her child with his second grade homework (Tr. 351).

Plaintiff opined that she would be unable to return to her medical billing position due to her need to nap for significant periods every day (Tr. 352). She alleged that she was unable to lift more than 10 pounds (Tr. 363).

    **B. Medical Records**

September, 1998 physical therapy records indicate that Plaintiff was successfully treated for treated for bilateral tendinitis (Tr. 179). An October, 2000 EMG showed evidence of Carpal Tunnel Syndrome ("CTS") on the right (Tr. 174-175). In May, 2002, Plaintiff sought emergency treatment after reporting headaches, reduced comprehension, and slurred speech (Tr. 116, 119). The following month, her speech slurring was deemed "minimal," but a diagnosis of MS was confirmed (Tr. 167). Plaintiff received Lopressor for hypertension and Paxil and Xanax for anxiety (Tr. 122). September, 2002 notes state that Plaintiff was "feeling depressed" but was neurologically stable (Tr. 164).

In March, 2003, a treating source remarked that recent imaging studies showed that brain lesions had reduced from May, 2002 but new ones had developed (Tr. 159, 161). Plaintiff reported occasional headaches but was otherwise asymptomatic (Tr. 161). In April, 2003, neurologist Andrew L. Marcus, M.D., noting a diagnosis of MS, observed the absence of a facial droop or memory problems (Tr. 225). Plaintiff was prescribed Copaxone (Tr. 226). In August, 2003, Plaintiff reported "no exacerbation" of MS (Tr. 219). In December, 2003, an x-ray of the right wrist was normal (Tr. 163). In February, 2004, Plaintiff, having recently lost her job, inquired about her eligibility for disability benefits (Tr. 217). In April, 2004, Dr. Marcus noted that Plaintiff's MS was in remission (Tr. 216). In June, 2004, Dr. Marcus, alluding to Plaintiff's complaints of cognitive problems, referred her for psychometric testing (Tr. 223).

In January, 2005, Dr. Marcus noted that Plaintiff reported fewer headaches and less

depression (Tr. 215). In March, 2006, A. Wasilewski, M.D., noting depression and MS, assigned Plaintiff a GAF of 50[2] (Tr. 255). March and October, 2005 treating records by Steven Stryk, M.D. show that Plaintiff experienced asthma and allergies (Tr. 247, 249-250). April, 2006 treating notes indicate that Plaintiff had "no new neurological problems" but was being treated for depression with Lexapro and Cymbalta (Tr. 214, 252). Dr. Wailewski noted that Plaintiff's mood had improved (Tr. 252).

May, 2006 imaging studies showed mild degenerative changes of the knee joints (Tr. 238, 243). In June, 2006, rheumatologist Luis E. Torregrosa, M.D., found the absence of an autoimmune condition (Tr. 232). In September, 2006, Dr. Wasilewski, completing a disability-related form, opined that Plaintiff's psychological problems precluded all work for at least 12 months (Tr. 227-228). The same month, Dr. Marcus found that symptoms of MS prevented Plaintiff from performing any job (Tr. 229-230). Psychotherapy notes created between April, 2006 and January, 2008 indicate that Plaintiff exhibited a depressed mood on numerous occasions (Tr. 288-309).

In February, 2008, neurologist Howard S. Rossman, D.O., observed 5/5 strength in all extremities and the absence of atrophy (Tr. 280). Completing a *Multiple Sclerosis Residual Functional Capacity Questionnaire* in May, 2008, he opined that Plaintiff's fatigue, sensory disturbances, pain, depression, and cognitive problems limited her to "low stress" jobs (Tr. 282-283). He opined further that Plaintiff would require work that allowed a sit/stand option and limited her to lifting 10 pounds or less (Tr. 284-285). Dr. Rossman found that Plaintiff should avoid all exposure to temperature extremes and hazards and avoid

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

concentrated exposure to noise and fumes (Tr. 286). In August, 2008, Dr. Rossman, noting that Plaintiff experienced situational depression as a result divorce proceedings, observed no symptoms of MS (Tr. 270-271). The following month, Preet Sandhu, M.D., found that Plaintiff was unable to lift more than ten pounds or concentrate for extended periods (Tr. 315). He opined that MS and depression prevented Plaintiff from performing any work (Tr. 316).

### C. VE Testimony

VE Richard Szydlowski classified Plaintiff's past relevant work as a billing clerk as semiskilled at the sedentary exertional level, adding that Plaintiff's description of her previous job duties suggested that she performed the work at the light exertional level[3] (Tr. 361). He found that Plaintiff possessed skills transferrable to the exertionally sedentary and light jobs of data entry, clerk, and order clerk (Tr. 362, 365).

The ALJ then posed the following question, taking into account Plaintiff's age, education level, and work experience:

> "[A]ssume . . . that our hypothetical Claimant needs work that is simple, repetitive-type tasks because there are moderate limitations in the ability to maintain concentration for extended periods due to fatigue as well as moderate limitation in the ability to carry out detailed instruction, and again, the fatigue and depression would impact on those areas, therefore, our hypothetical claimant can only do those tasks that we reference as unskilled. ¶There is a need for relatively clean air in a work environment. That work must not be at hazardous heights or around dangerous machinery That work must not be in temperature extremes or in humid areas, nor in areas of noise extremes areas. ¶That work must be low-stress work . . . I am defining those low-stress as no

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

work with the general public, no work at a production pace, no work as a team member wherein co-workers completion of their task is dependant upon our hypothetical claimant's completion of her task. That work also must not require reading, calculations or general math. Our hypothetical claimant can sit six of eight hours, stand and walk no more than two hours in an eight-hour workday, can lift ten pounds occasionally, and less than ten pounds frequently. ¶If you assume that, what jobs if any, would our hypothetical claimant be vocationally qualified to perform?"

(Tr. 366-367).

VE testified that given the above limitations, the individual could perform the unskilled, exertionally sedentary work of a document preparer, collator, or envelope stuffer (4,000 jobs in the regional economy), inspector/checker (1,000), and surveillance system monitor (1,000) (Tr. 368). The VE stated that his testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"), and *Selected Characteristics of Occupations* ("SCO") (Tr. 368). In response to questioning by Plaintiff's attorney, the VE testified that the inability to sit for more than four hours a day, the need to take unpredicted naps, or the inability to concentrate for even short periods would preclude all work (Tr. 369-373).

### D. The ALJ's Decision[4]

ALJ Revels found that although Plaintiff's conditions of "multiple sclerosis, an anxiety disorder, asthma, depression, migraines, allergies and bilateral carpal tunnel syndrome" were severe impairments under 20 C.F.R. § 404.1520(c), none of the conditions met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation 4 (Tr. 16-18).

The ALJ determined that although Plaintiff was unable to perform her past relevant work, she retained the following residual functional capacity ("RFC"):

"Sedentary work . . . except she is limited to unskilled, simple repetitive-type tasks due to fatigue, and moderate limitations in ability to understand,

---

[4] The ALJ used Plaintiff's married name of Georgia Ann Wilson, the name she used on her application for benefits (Tr. 41). The application also notes her maiden name of Georgia Anne Powell, the name used in this complaint.

> remember, and carry out detailed instructions due to fatigue and depression. The claimant needs to work in a relatively clean air work environment. The work must not be at hazardous heights or around dangerous machinery. The work must not be at temperature extremes or in humid areas or areas of noise extremes. The work needs to be 'low stress' work which is defined as no work with the general public, no work at a production pace, and no work as a team member wherein coworkers' completion of their tasks is dependent on claimant's completion of her tasks. The work must not require reading, calculations or general math. In addition, the claimant is limited to sitting six hours and standing and/or walking two hours in an eight hour workday. Finally, claimant is limited to lifting 10 pounds occasionally and less than 10 pounds frequently"

(Tr. 18, 20).

Citing the VE's job numbers, the ALJ found that Plaintiff perform the work of a clerical handler, inspector/checker, and "security servicer" (Tr. 21).

The ALJ found Plaintiff's allegations of disability "not entirely credible" (Tr. 19). She found that Plaintiff did not experience restrictions in daily living (Tr. 17). The ALJ concluded that treating notes did not support Plaintiff's claims that MS created cognitive difficulties (Tr. 19). She observed that Plaintiff's asthma was controlled with conservative treatment (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account

whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Credibility Determination

Plaintiff disputes the ALJ's credibility determination. *Plaintiff's Brief* at 6-10, *Docket #10*. She argues that contrary to the requirements of SSR 96-7p, the ALJ did not provide

adequate reasons for rejecting her allegations of cognitive, emotional, and physical limitations. *Id.* Plaintiff submits that her testimony that she required daily naps and experienced fatigue and confusion, discounted by the ALJ, is well supported by the record. *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." [5]

In the present case, the ALJ's credibility analysis is entitled to the deference of this Court. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). The ALJ noted that Plaintiff's self-described activities of daily living included household chores, cooking, shopping, socializing, and paying bills (Tr. 17 *citing* 88-91). She

---

[5] C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the making the determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

noted further that Plaintiff had not followed up on Dr. Marcus's recommendation that she seek psychometric testing (Tr. 19). Contrary to the claim that fatigue and confusion created significant restrictions, the ALJ noted that Plaintiff asserted during her divorce proceedings that she was fully able to care for her elementary age son (Tr. 19 *citing* 276). The ALJ cited Dr. Rossman's August, 2008 finding of "no relapse activity" of MS (Tr. 19).[6] Although Plaintiff alleged asthma and allergies, the conditions were controlled with prescription medicine and an inhaler used on an "as-needed basis" only (Tr. 19). The ALJ's credibility determination, amply support by record evidence, will not be disturbed.

### B. The Treating Physician Analysis

Plaintiff, building on the "credibility" argument, contends further that the opinions of her treating physicians also support her allegations of disability. *Plaintiff's Brief* at 10-17. She argues that the ALJ's discussion of her treating physicians' opinions was substantively and procedurally deficient. *Id.*

### 1. Basic Principles

"If uncontradicted, the [treating] physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th

---

[6] The ALJ also noted that Plaintiff twice asked Dr. Rossman for a disability letter, and became angry when she was asked for something in writing from her attorney (Tr. 19). Dr. Rossman's notes of August 18, 2008 state as follows:

> "This is pts second request for a letter stating she is 'totally disabled' and 'cannot work' but is able to 'be a good mother' to her son. She is requesting this for a divorce case.
>
> "Asked pt to bring/send/fax something in writing from attorney stating what is need/requested in letter for court case. Pt states she is 'pissed off!' and hung up the phone on me." (Tr. 276).

This exchange does not reflect well on Plaintiff's credibility. Apart from soliciting a disability opinion for strategic purposes, she states, inconsistently, that she cannot work, but is capable of providing care for her child.

Cir. 1991). "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)). Further,

> "[i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

*Wilson,* at 544; 20 C.F.R. § 404.1527(d)(2))

Regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion:

> "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544 (*citing Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)). The mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection. *Hensley,* 573 F.3d at 267 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion."). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings. *Warner v. Commissioner of Social*

*Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004).

### 2. Dr. Sandhu

Plaintiff cites Dr. Sandhu's September, 2008 finding that she was disabled as a result of MS (Tr. 314-315). However, the ALJ permissibly rejected Dr. Sandhu's finding, noting that the diagnosis of MS and its limitations was outside his area of specialization (Tr. 20). *See* 20 C.F.R. § 404.1527(d)(2).

### 3. Dr. Rossman

Plaintiff faults the ALJ for not adopting Dr. Rossman's opinion that she was unable to sit for more than four hours a day and required unscheduled breaks. She notes that Dr. Rossman's treating records, alluding to fatigue, headaches, mental confusion, anxiety and depression, support the sitting limitation (Tr. 270, 282-286). Contrary to this argument, the ALJ's analysis of Dr. Rossman's opinion is well supported and well explained. Although she adopted the neurologist's findings regarding concentrational limitations, she correctly noted that the four-hour limitation on sitting and the "unscheduled breaks" finding was unsupported by chronological evidence in the record, and although the ALJ considered it, she gave it only limited weight (Tr. 20).

### 3. Drs. Wasilewski and Marcus

Likewise, the ALJ's determination that the "disability" opinions of these physicians were "conclusory" is well supported by the record (Tr. 20 *citing* 227-230). Dr. Wasilewski's September, 2006 opinion that psychological problems rendered Plaintiff incapable of even unskilled work is contradicted, if by nothing else, Plaintiff's full range of regular activities (Tr. 87-92, 227-228). Dr. Marcus's September, 2006 opinion that Plaintiff was disabled as a result of MS stands in contrast to his own treating records showing that Plaintiff's condition

was either improving or in remission (Tr. 215-216, 219).

ALJ Revel's discussion of the treating source material does not present grounds for remand.

### C. The Hypothetical Question

Plaintiff argues that the ALJ's Step Five determination is tainted by its reliance on the VE's erroneous job testimony. *Plaintiff's Brief* at 17-21. First, she contends that the VE's statement that she could perform the job of a security service worker contradicts the information found in the DOT. *Id.* at 17-18. Citing *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005), Plaintiff argues that the hypothetical question limiting her to "simple, repetitive-type tasks" precludes work as a security service worker. *Id.* at 17.

The Court need not consider whether the job of security service worker is precluded by the hypothetical limitations in light of the fact that even if the security positions were eliminated, the VE also found the existence of 5,000 other positions (inspector/checkers, document preparers, etc.) in the regional economy (Tr. 368). *See Born v. Sec'y of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990) (*citing Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)(The existence of 1,350-1,800 jobs in the regional economy constitutes a significant number).

Plaintiff argues next that the ALJ's choice of hypothetical limitations did not account for her moderate deficiencies in concentration, persistence, and pace as stated in the administrative decision. *Plaintiff's Brief* at 19-20. Plaintiff cites *Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987) for the proposition that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments" (internal citations omitted). *Plaintiff's Brief* at 18.

Plaintiff's moderate concentrational deficiencies are well accounted for in the hypothetical question. She cites a string of cases from this district stating that the limitations of "simple" and/or "unskilled" work are inadequate to address moderate concentrational limitations. *Plaintiff's Brief* at 19. Plaintiff is correct that the hypothetical question includes the term "simple." However, in addition, ALJ Revel's also included "moderate limitations in the ability to concentrate" in the text of the hypothetical along with a preclusion on work with the general public or high production work (Tr. 366-367). While the ALJ was not required to list Plaintiff's psychological limitations verbatim, she took the extra step of referencing the moderate concentrational impairments in the question to the VE, stating as follows:

> "[O]ur hypothetical Claimant needs work that is simple, repetitive-type tasks because there are moderate limitations in the ability to maintain concentration for extended periods due to fatigue as well as moderate limitation in the ability to carry out detailed instructions, and again, the fatigue and depression would impact on those areas. . . . That work must be low-stress work [defined as] no work with the general public, no work at a production pace, no work as a team member . . ."

(Tr. 366-367). *See Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004); *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

Plaintiff also argues that the hypothetical question ought to have reflected a greater degree of physical limitation. *Plaintiff's Brief* at 20-21. However, because the ALJ explained her reasons for rejecting the more extreme claims made by Plaintiff and her treating sources, she was not required to include them in the hypothetical limitations. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."

In closing I note that the decision to uphold the ALJ's non-disability finding should not

be read to trivialize Plaintiff's various conditions or personal problems. Nonetheless, the ALJ's decision is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level and as such, should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

A judgment consistent with this Opinion and Order shall issue.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 1, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 1, 2010.

S/Gina Wilson
Judicial Assistant